**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **ITILITY, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil Action No. 1:20-cv-477** |
| ) | |
| **THE STAFFING RESOURCE GROUP, INC.,** ) | |
| **and TRAVIS C. HIRE** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM OPINION**

Plaintiff ITility LLC's ("ITility") has brought breach of contract and tort claims against Defendants The Staffing Resource Group's ("SRG") and Travis Hire.[1] At issue on SRG's Rule 12(b)(6) partial Motion to Dismiss is:

(i) whether plaintiff's fraud claim is barred by Virginia's "Source of Duty" Rule,

(ii) whether plaintiff's claim for tortious interference with a business expectancy is barred by SRG's participation in the business expectancy, and

(iii) whether the Teaming Agreement between the parties bars plaintiff's claims for consequential and punitive damages.

SRG's partial Motion to Dismiss must be granted because:

(i) Virginia's Source of Duty Rule bars plaintiff's tort claims because those claims are based on SRG's performance of a contractual duty,

(ii) SRG was party to the business expectancy at issue and therefore cannot, as a matter of Virginia law, be held liable for interfering with its own business expectancy, and

(iii) the Teaming Agreement explicitly bars recovery of consequential and punitive damages.

---

[1] Defendant Hire has been granted an extension of time to respond to the Amended Complaint until fourteen days after the issuance of this decision. *See ITility v. The Staffing Resource Group, Inc.*, No. 1:20-cv-477 (E.D. Va. Sept. 21, 2020) (Order).

1

**I.**

The following factual allegations relevant to SRG's Motion to Dismiss are derived from plaintiffs' Amended Complaint and provisions from the contract, which was attached to the Amended Complaint as an exhibit.[2]

- ITility is a service-disabled veteran-owned small business that provides United States government clients with program management, systems engineering, enterprise services, system testing services, education and training, and administrative support. Am. Compl. ¶ 19.

- SRG is a staffing and recruitment firm that provides specialized staffing solutions to its clients and consultants. *Id.* at ¶ 21.

- At all times relevant to this action, Travis Hire served as SRG's Vice President of Government Services. In this role, Hire managed SRG's recruiting and staffing efforts in the government contract field. *Id.* at ¶ 24.

- On or about December 21, 2018, the United States Special Operations Command ("SOCOM") issued a solicitation ("Solicitation") seeking a contractor to provide geospatial engineering, modeling and simulation engineering, and IT engineering support services to SOCOM. *Id.* at ¶ 25.

- The Solicitation contemplated a firm, fixed-price task order with a base performance of one year, with three one-year option periods. *Id.* at ¶ 26.

- The Solicitation informed potential offerors that their proposals would be evaluated under three factors, to be submitted in three volumes: technical, past performance, and price, with the technical factor being the most important. Offerors were required to submit in their respective technical volume the resumes of key personnel that they were proposing, as well as signed letters of intent from each individual. *Id.* at ¶ 28.

- ITility developed and submitted a competitive proposal in response to the Solicitation. As part of the proposal, ITility and SRG entered into a Teaming Agreement on or about January 29, 2019. In the Agreement, SRG agreed to provide recruiting services and to submit resumes of potential candidates and certifications as required by the solicitation to be included in the technical volume of ITility's proposal. *Id.* at ¶¶ 2-3, 30, 33; Am. Compl.

---

[2] Documents attached to a complaint are reviewable on a motion to dismiss so long as they are integral to the complaint and authentic. *See, e.g., Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018); *see also Braun v. Maynard*, 652 F.3d 557, 559 (4th Cir. 2011) (explaining that generally courts "do not consider materials other than the complaint and documents incorporated into it when evaluating that complaint under Rule 12(b)(6)").

2

Ex. A ("Teaming Agreement").

- The Teaming Agreement required SRG to "comply with all applicable federal, state or local laws, regulations or ordinances in effect or hereafter adopted." Am. Compl. ¶ 39; Teaming Agreement § 5.6.

- The Teaming Agreement further provided:

    > Should either Party violate any of the Laws then . . . the offending Party shall indemnify the other Party for any penalty, loss or expenses incurred by the other Party as a result of the offending Party's breach of any of its obligations under this Article.

    Teaming Agreement § 5.6.

- In or around January 2019, Travis Hire provided the names of several potential candidates for consideration as part of ITility's proposal, including Sean Hord and Zackary Shifflett. Am. Compl. ¶ 44-45.

- On or about February 2, 2019, ITility asked Hire to obtain Hord's and Shifflett's permission to use their names and resumes in its proposal. ITility also requested that Hire obtain a signed letter of intent from each candidate. *Id.* at ¶ 46.

- Hire informed ITility that he had obtained Hord's and Shifflett's permission to be included as candidates in the proposal and, on or about February 3, 2019, provided ITility with their signed letters of intent. *Id.* at ¶ 47. Hire originally provided ITility with a letter of intent from Hord bearing an electronic signature, which Hire said was because Hord "was not near a printer." *Id*. at ¶ 48. Upon further request, Hire provided a letter of intent for Hord that Hire represented contained Hord's handwritten signature. *Id.* at ¶¶ 48-49.

- Contrary to what Hire represented to ITility, Hire had forged Hord's and Shifflett's signatures and had not received their permission to be included in ITility's proposal. *Id.* at ¶¶ 52-53.

- Thereafter, ITility submitted its proposal to SOCOM, which included the resumes and signed letters of intent of Hord and Shifflett that had been forged by Hire. *Id*. at ¶ 54.

- On March 15, 2019, SOCOM selected ITility's proposal for the prime contract award. *Id*. at ¶ 55.

- On March 29, 2019, ITility learned that Ironclad Technology Services, LLC, one of its competitors in the bidding process, had filed a protest before the United States Court of Federal Claims concerning the prime contract award. The bid protest alleged that ITility did not have Hord's permission to include him in its proposal. *Id*. at ¶¶ 56-57.

3

- In response to the bid protest, ITility asked SRG to provide documentation demonstrating Hord's willingness to be included in ITility's proposal. Hire sent ITility an email string that appeared to be an exchange between Hord and Hire. Hire was unable to provide the original email file, claiming that the email had been deleted. After receiving this representation from Hire, ITility contacted SRG's Chief Operating Officer, who informed ITility that SRG would promptly investigate the matter. *Id.* at ¶¶ 58-62.

- On or about April 3, 2019, SRG's Chief Operating Officer informed ITility that SRG's internal investigation had revealed that Hire had forged Hord's signature on Hord's letter of intent and that Hire did not have Hord's permission to include him in ITility's proposal. SRG immediately terminated Hire's employment based on his forgery and misrepresentation. Further investigation revealed that Hire had also forged Shifflett's signature and that Hire did not have Shifflett's permission to be included in the proposal. *Id.* at ¶¶ 63-66.

- On or about April 17, 2019, SOCOM took corrective action in response to the bid protest by vacating its award to ITility and cancelling the entire Solicitation. *Id.* at 68.

On April 24, 2020, Plaintiff ITility brought the instant action against Defendants SRG and Hire, alleging breach of contract and actual fraud. Compl. Plaintiff filed an amended complaint on July 27, 2020, alleging tortious interference with business expectancy (Count Four) in addition to breach of contract (Count One) and actual fraud (Count Two). Am. Compl. Then, on August 17, 2020, SRG filed a Motion to Dismiss Count Two, Court Four, and Claims for Consequential and Punitive Damages in Plaintiff's Amended Complaint, leaving only a breach of contract claim against SRG. Oral argument on SRG's partial Motion to Dismiss was held telephonically on September 16, 2020. As this matter has been fully briefed and argued, it is now ripe for disposition. For the reasons that follow, SRG's partial Motion to Dismiss must be granted.

## II.

In order to survive a Rule 12(b) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the Plaintiff pleads factual content that allows the court to draw

4

the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 570). For purposes of resolving the motion to dismiss, plaintiff's well-pleaded allegations are assumed to be true and all facts are viewed in the light most favorable to plaintiff. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

SRG first contends that plaintiff's actual fraud claim is barred by Virginia's Source of Duty Rule, the Rule formulated by the Supreme Court of Virginia for the purpose of demarcating the civil liability boundary between tort and contract in order to counter the modern trend of lawyers adding a tort claim to every breach of contract claim to enhance potential damages. *See Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244, 255-56 (Va. 2019). Although there is some confusion in prior caselaw,[3] the essence and core principle of the Source of Duty Rule may be stated as follows: the sole and exclusive remedy for a claim based on the performance of a contractual duty is in contract.

The Rule is well illustrated in the Supreme Court of Virginia's decision in *Richmond Metropolitan Authority v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344 (Va. 1998). There, a municipal corporation entered into a contract for the construction of a baseball stadium. During construction of the stadium, the construction company failed to comply with specifications in the contract and submitted applications for progress payments falsely stating that the company had fully complied with the contract. *Id.* at 345. When the municipal corporation learned of these facts, it sued the construction company for breach of contract as well as actual and constructive fraud. *Id*. On these facts, the Supreme Court of Virginia, applying the Source of Duty Rule, concluded that the actual and constructive fraud claims had to be dismissed. *See id*. at 347. Despite the fact

---

[3] *See Tingler*, 834 S.E.2d at 261 ("[C]onsiderable confusion in prior caselaw makes it difficult to generalize on [the Rule].").

that the builder "misrepresented its compliance with the design criteria," the Supreme Court of Virginia concluded that the claims for actual and constructive fraud were not actionable in tort because they were "related to a duty or obligation that was specifically required by the [contract]." *Id.*[4]

The Rule, applied to the fraud claim in plaintiff's amended complaint, requires dismissal of that claim because it is nothing more than a contract claim dressed up as a tort claim; it is a fraud claim based on SRG's performance of a contractual duty. Like the defendant in *Dunn Construction*, SRG committed fraud in the performance of a contractual duty; here SRG provided false and forged certifications required under the contract, while the defendant in *Dunn Construction* provided false guarantees about construction and repairs required under the contract. 682 S.E.2d at 947. Just like in *Dunn Construction*, plaintiff's fraud claim here is clearly part and parcel of SRG's performance of its contractual duty. Accordingly, just as the Supreme Court of Virginia barred the fraud claim in *Dunn Construction*, the fraud claim must be barred in this case.

Seeking to avoid this outcome, the plaintiff alleges that SRG breached a common law duty to be truthful and a statutory duty not to forge documents. Plaintiff argues that these duties are separate from the contract. They clearly are not; SRG had a contractual obligation to provide resumes and certifications as required by the solicitation, with the implicit requirement that they be genuine, and SRG allegedly failed in this contractual duty by submitting false and forged certifications and resumes. As was true in *Dunn Construction* and *McDevitt*, the alleged common law and statutory duties breached in this case are "related to a duty that arose under the contract"

---

[4] *See also Dunn Construction Company v. Cloney*, 682 S.E.2d 943 (Va. 2009) (holding that false representations concerning the construction of a house were "related to a duty that arose under the contract" and therefore were not actionable in tort); *Tingler v. Graystone Homes, Inc.*, 824 S.E.2d 224 (Va. 2019) (holding that tort claims arising from the performance of a home construction contract were barred by the Source of Duty Rule, but allowing tort recovery for injuries arising outside the contract).

and therefore tort recovery is precluded by the Source of Duty Rule. *Dunn Construction*, 682 S.E.2d at 947; *see also McDevitt*, 507 S.E.2d at 347. In short, because the alleged breach is based exclusively on defendant's performance of a contractual duty or obligation, the plaintiff's sole remedy is contract.

Plaintiff also argues that the duties breached were outside the contract because the Teaming Agreement "does not require SRG to represent and warrant the performance of any of its actions under the Teaming Agreement." Pl. Opp'n to Mot. to Dismiss, Aug. 31, 2020, at 11. The question raised by a Source of Duty analysis is not whether the contract obligated the defendant to certify its performance or not to commit fraud. Rather, the Source of Duty Rule asks whether the alleged tort is based on the defendant's performance of a contractual duty. Here, SRG had a contractual duty to provide resumes and certifications, and failed in that duty. Therefore, plaintiff's sole remedy is contract.

### III.

SRG next argues that the Amended Complaint fails to state a claim for tortious interference with business expectancy because SRG was not a stranger to the business expectancy.

Under Virginia law, a prima facie case of tortious interference with a business expectancy requires:

(1) the existence of a valid contractual relationship or business expectancy;

(2) knowledge of the relationship or expectancy on the part of the interferor;

(3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and

(4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 318 (Va. 2014) (quoting *Chaves v.*

*Johnson*, 335 S.E.2d 97, 102 (Va. 1985)). And where, as here, the plaintiff asserts the existence of a business expectancy rather than a contract, the plaintiff is also required to show that the defendant employed improper methods when engaging in the alleged intentional, interfering conduct. *See Dunlap*, 754 S.E.2d at 318.

Important, and dispositive here, is the principle stated recently by the Supreme Court of Virginia that "[a]n action for tortious interference with a contract or business expectancy . . . does not lie against parties to the contract, but only lies against those outside the contractual relationship, i.e., strangers to the contract or business expectancy." *Francis Hosp., Inc. v. Read Props., LLC*, 820 S.E.2d 607, 610 (2018). In other words, only a party outside the business expectancy—a stranger to the business expectancy—may be held liable for interference with a business expectancy. *Id*; *see also L-3 Commc'ns Corp. v. Serco, Inc.*, 926 F.3d 85, 91 (4th Cir. 2019), *reh'g denied* (July 16, 2019).

This principle, applied here, requires dismissal of plaintiff's claim for interference with business expectancy because SRG was not a stranger to the business expectancy, but was a party to it. Therefore, SRG cannot, as a matter of law, have interfered with that business expectancy. *Francis Hosp., Inc.*, 820 S.E.2d at 610.

Nor is there any doubt that SRG is not a stranger to the business expectancy. SRG had a cognizable interest in the business expectancy with SOCOM through the solicitation proposal prepared by plaintiff. In this regard, the Teaming Agreement outlines the benefits that SRG expected if plaintiff secured the prime contract with SOCOM. Although SRG was not guaranteed a subcontract, the Teaming Agreement requires the parties to "enter into negotiations, in good faith, to reach agreement with respect to the terms and conditions of a subcontract." Am. Compl.,

8

Ex. A § 3.1.[5] It is apparent from the record that the only way SRG could secure subcontracting work was by having the plaintiff secure the prime contract award. SRG was not in a competitive relationship with plaintiff, nor was SRG a disinterested third party to the expectancy.[6] SRG actively desired and worked toward the same outcome desired by plaintiff: having plaintiff secure the prime contract award from SOCOM. Because SRG was a party to the business expectancy at issue, SRG, as a matter of Virginia law, cannot be held liable for interfering with that expectancy.

Nor is plaintiff's tortious interference claim rescued by plaintiff's heavy reliance on *CGI Federal Inc. v. FCi Federal, Inc.*, 814 S.E.2d 183 (Va. 2018). That decision did not involve a claim for tortious interference. In *CGI Federal*, the Supreme Court of Virginia found only that a teaming agreement between the parties was not a valid contract because it was merely an agreement to negotiate in the future. *Id*. at 188-89. Significantly, the Supreme Court of Virginia did not consider whether there existed a business expectancy or whether either party had a valid business expectancy in that case. Accordingly, *CGI Federal* therefore fails to support plaintiff's contention that SRG is not a party to the business expectancy in this case.

Accordingly, Count Four of plaintiff's Amended Complaint must be dismissed.

**IV.**

Finally, SRG moves to dismiss plaintiff's claims for consequential and punitive damages as barred by the Teaming Agreement. As a preliminary matter, punitive damages generally are not

---

[5] Under Virginia law, contractual provisions that set out agreements to negotiate in the future are unenforceable as vague and indefinite. *See Navar, Inc. v. Fed. Bus. Council*, 784 S.E.2d 296, 300 (2016). However, agreements to negotiate can serve as evidence to support the finding of a valid business expectancy.

[6] *See 17th St. Assocs., LLP v. Markel Int'l Ins. Co.*, 373 F. Supp. 2d 584, 600 (E.D. Va. 2005) (finding a "fifth, unstated element" to a prima facie case of tortious interference in business expectancy to be "a competitive relationship between the party interfered with and the interferor"); *see also Oceguera v. Alutiiq Sec. & Tech., LLC*, 2010 WL 3894606, at *4 (S.D. Fla. Oct. 1, 2010) (applying Florida law to find in a tortious interference with a business relationship case that the defendants "were not 'disinterested third part[ies]' to the relationship, and, as a matter of law, could not have interfered with it").

9

allowed for breach of contract claims under Virginia law. *See Kamlar Corp. v. Haley*, 299 S.E.2d 514, 517 (1983). Therefore, as the plaintiff has conceded, the dismissal of plaintiff's tort claims requires the dismissal of plaintiff's claims for punitive damages. *See* Pl. Br. in Opp'n, at 20 n. 2.

In regard to consequential damages, the Teaming Agreement clearly and conclusively bars recovery of consequential damages.[7] Three sections of the Teaming Agreement categorically bar claims for consequential damages in actions arising under the agreement. First, in Section 1.4, the Teaming Agreement in capital letters provides that:

> UNDER NO CIRCUMSTANCES SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR LOST OR ANTICIPATED PROFITS, CONSEQUENTIAL, INCIDENTAL, SPECIAL, PUNITIVE, OR ANY OTHER TYPE OF INDIRECT DAMAGES ARISING UNDER OR RELATING TO THIS AGREEMENT.

Complaint, Ex. A ("Teaming Agreement") § 1.4.

Second, Section 5.9 of the Teaming Agreement provides that:

> In any action . . . brought . . . pursuant to an alleged breach of the Agreement . . . each of the parties agrees that no claim shall be made, nor liability found, for any special, consequential, or punitive damages.

Teaming Agreement § 5.9.[8]

Finally, Section 5.13 of the Teaming Agreement states that "[n]either party shall be liable

---

[7] The Supreme Court of Virginia has recently used two definitions of consequential damages. In the 2016 case of *William H. Gordon Assocs., Inc. v. Heritage Fellowship, United Church of Christ*, the Court described consequential damages as "those which arise from the intervention of 'special circumstances' not ordinarily predictable." 784 S.E.2d 265, 279 (2016) (quoting *Roanoke Hospital Ass'n v. Doyle & Russell, Inc*., 214 S.E.2d 155, 160 (1975)). Earlier, in 2003, the Supreme Court of Virginia relied on the definition in Black's Law Dictionary, describing consequential damages as "[s]uch damage, loss, or injury as does not flow directly and immediately from the act of the party, but only from some of the consequences or results of such act." *Pulte Home Corp. v. Parex, Inc.*, 579 S.E.2d 188, 193 (2003) (citations omitted).

[8] Section 5.9 goes on to state that the "Prime [Contractor]"—the plaintiff in this case—is entitled to "an award of reasonable attorneys' fees and costs" if the plaintiff is the "substantially prevailing party in any Action." Teaming Agreement, at § 5.9.

to the other for any consequential or punitive damages under this Agreement." Teaming Agreement § 5.13. Section 5.13 also limits the liability of "either Party to the other for any claims, liabilities, actions or damages arising out of or relating to" the Teaming Agreement to "the amount of out-of-pocket costs incurred by the other Party." *Id.*

These portions of the Teaming Agreement make unmistakably clear that the parties contractually limited their risk to exclude consequential damages from recovery. Sections 1.4, 5.9, and 5.13 state in no uncertain terms that an aggrieved party cannot recover consequential damages. *See* Teaming Agreement §§ 1.4, 5.9, 5.13. Nor, as plaintiff contends, does Section 5.6 resurrect plaintiff's claim for consequential damages. Section 5.6 requires the offending party to indemnify the other party for "any penalty, loss or expense" incurred as a result of the offending party's violation of any "applicable federal, state or local laws, regulations or ordinances." Teaming Agreement § 5.6. Though Section 5.6 may allow for limited recovery directly incurred by plaintiff due to SRG's violation of any laws, the Section does not, as plaintiff would have it, create a general exemption from the bar on consequential damages clearly established throughout the Teaming Agreement. Thus, plaintiff's claim for consequential damages must be dismissed.

An appropriate Order will issue separately.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
November 13, 2020

/s/
T. S. Ellis, III
United States District Judge